UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

GORDON G. SMITH,

        Petitioner,

v.                                        Case No. 5:05-cv-327-Oc-10GRJ

SECRETARY, DEPT. OF CORRECTIONS,

        Respondent.
_____

## **ORDER DENYING PETITION**

Petitioner initiated this case by filing a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The Petition stems from Petitioner's Sumter County jury-trial convictions for aggravated assault with a firearm and possession of a firearm by a convicted felon, for which he received concurrent sentences of five and ten years, respectively. The Respondents have filed a Response (Doc. 9), and Petitioner has replied to the Response (Doc. 15). Upon due consideration of the Petition, the Response, the state-court record contained in Respondent's Appendix, and Petitioner's reply, the Court concludes that the Petition must be denied.[1]

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. See Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

## Background

The factual and procedural history underlying the Petition may be summarized as follows. During voir dire, the trial court explained the charges against Petitioner and then asked "[i]s there anything about this charge here that would cause any of you to believe that you couldn't sit in judgment on Mr. Smith? Okay. No problem." Subsequently, Petitioner's appointed counsel, Julian Harrison, addressed juror Scott Forshay, who confirmed that he understood that Petitioner was presumed innocent and that the state must prove his guilt beyond a reasonable doubt. App. tab C. at 23. After making other comments to the venire and questioning them regarding past encounters with the criminal justice system, Mr. Harrison asked whether anyone had ever had a gun pointed at them. Id. at 24-33. Mr. Forshay responded affirmatively. Id. at 33. When asked whether that incident had been taken to court, Mr. Forshay responded "[n]o, it was an angry ex-husband." Id. Mr. Harrison then asked "[b]ecause you had that experience do you think that would affect your ability to consider the evidence fairly in a case where the allegation is that a gun was pointed at someone?" Mr. Forshay responded "[p]robably." Mr. Harrison stated "[o]kay. Okay," and then continued with voir dire. Id. at 33-34.

Later in the proceedings, Mr. Harrison asked the venire whether they understood that in order to find Petitioner not guilty they did not have to believe that he was innocent but only that the state had not proven their case. Id. at 38. Mr. Harrison specifically asked "Mr. Forshay, do you understand that not guilty means

that the state didn't prove its case?" Mr. Forshay indicated his agreement.  Id. at 38-39.  After completing voir dire, Mr. Forshay was accepted as a member of the jury.  Mr. Harrison stated "[y]our Honor, let the record reflect we've conducted the voir dire in open court and that the defendant has seen and heard everything that has transpired during this, during the striking session."  Id. at 43.

The prosecution presented the testimony of three witnesses: Norman Niles, David Bentley, and Howard Keith Thompson.  App. tab B.  Niles and Thompson were eyewitnesses to the incident underlying the charges against Petitioner.  Both men testified that they had all been drinking on the night of the incident, and were at a campfire at Bentley's residence.  Petitioner and Niles had argued the night before.  The men began arguing again, and Petitioner produced a gun, pointed it at Niles, and told him to leave.  Niles got in his truck and left the scene, and heard a shot fired as he was leaving.  Niles conceded on cross-examination that he did not see Petitioner shoot the gun.  Id. at 17-29.

Bentley testified that he was inside the house when he heard a shot. Petitioner came into the house, and gave Bentley a gun; Bentley testified that the gun belonged to him. Id. at 31-32. Bentley gave the gun to Thompson and told him to remove it from the premises.  Id. at 33.  Bentley testified that Petitioner stated "if a deputy had come he wasn't there."  Id. at 34.  Bentley testified that he believed Petitioner had taken the gun from a locked box in Bentley's van, but the box was not inspected by police and subsequently Bentley threw the box away.  Id. at 39-40.

3

Thompson testified that he also was sitting at the campfire with Petitioner and Niles, and that the men began arguing and Petitioner produced a gun, cocked it, and "stuck it towards Norman's forehead and told him to leave the premises." Id. at 46. As Niles was leaving in his truck, Thompson saw Petitioner fire the gun at the ground. Id. at 47. After Petitioner gave the gun to Bentley, Bentley gave it to Thompson and Thompson took the gun to his house, put it in the street, and waited for deputies who had been called to the scene by Thompson's wife. The deputies took the gun and went to Bentley's residence. Id. at 50-53.

Following the close of the State's case, out of the presence of the jury, the trial court inquired whether Harrison had any motions to make. Mr. Harrison replied "I believe the State has proved a prima facie case if the jury believes the State's witnesses. But as far as – " The court interrupted and stated "the Court reserves on granting any judgment of acquittal." Id. at 57. The defense rested without putting on any witnesses. Id. at 58. The court specifically inquired whether Petitioner had consulted with his attorney and was satisfied with his services up to that point, and Petitioner responded "[t]hat's correct." Id. at 59. The jury found Petitioner guilty of both charges. Id. at 102-03.

At sentencing, the prosecutor told the court that the argument that lead to Petitioner pulling a gun on Niles was because Niles had seen Petitioner hugging and fondling a 13-year-old. App. tab D. at 7-8. Mr. Harrison objected, and moved for a mistrial and for a new trial. Id. at 8. The court pointed out that the trial had already

4

concluded and then subsequently stated that the prosecution's comments were not going to influence the court in sentencing.  Id. at 8, 11.

Following Petitioner's conviction, the court appointed new counsel to handle Petitioner's appeal.  Petitioner's appellate counsel filed a notice of appeal and a brief pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious grounds for appeal.  App. tab E.  The record does not reflect that Petitioner filed any response to the Anders motion.  See App.  The appellate court affirmed Petitioner's conviction without opinion.  Id. tab F.

Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850 asserting the following grounds for relief: (1) counsel was ineffective for failing to strike juror Forshay on the grounds of bias; (2) counsel was ineffective for failing to move for a judgment of acquittal challenging the sufficiency of the evidence, and the trial court made fundamental errors that deprived Petitioner of a fair trial; (3) counsel was ineffective for failing to investigate, subpoena, or call witnesses, including Floyd Mudd, David Parrish, and Deputy John Galvin; (4) counsel was ineffective for admitting Petitioner's guilt; and (5) the prosecutor made misleading statements in closing argument and referred to an uncharged offense at the sentencing hearing, in violation of Petitioner's right to due process, and the court should have granted a mistrial.  App. tab H.

After ordering a response from the State, the trial court summarily denied relief without an evidentiary hearing.  App. tab J.  The court denied relief with respect to

counsel's performance during jury selection, noting that Petitioner had conferred with his counsel throughout the process and at no time indicated that he was dissatisfied with the jury. The court found that there was no basis for counsel to file a motion to suppress, and noted that the case turned on the credibility of the three witnesses who testified for the prosecution, two of whom were eyewitnesses, and that such credibility was evaluated by the jury. The court rejected Petitioner's claim that his counsel was ineffective in investigating and preparing for trial, noting that the calling of witnesses is largely a matter of trial tactics and that counsel appeared to be adequately prepared and represented Petitioner in a professional manner. The trial court found nothing in the record to support an allegation that Petitioner's counsel admitted or conceded Petitioner's guilt to the jury. With respect to Petitioner's fifth claim alleging prosecutorial misconduct, the Court found nothing in the record that merited postconviction relief. The court noted that Petitioner's allegation stemmed from the prosecutor's comments during sentencing that Petitioner had been observed hugging or fondling a 13-year-old girl, and the court did not consider such comments in sentencing Petitioner. The court found no basis for granting a mistrial, and further found that such claim should have been raised on direct appeal.

The appellate court affirmed without opinion. Id. tab K. Petitioner unsuccessfully pursued a motion to correct an illegal sentence pursuant to Fla. R. Crim. App. 3.800, and a state habeas corpus petition that was dismissed for lack of jurisdiction as untimely. Id. at tabs M-S.

Petitioner filed the instant Petition, which Respondent concedes was timely filed pursuant to 28 U.S.C. § 2244(d)(1). See Doc. 9. Petitioner asserts the following grounds for relief: (1) his conviction was obtained by use of evidence obtained pursuant to an unlawful arrest, because no evidence linked him to the firearm and he was never in possession of a firearm; (2) his conviction was obtained by a jury that was unconstitutionally selected and impaneled because juror Scott Forshay was biased; (3) his trial counsel rendered ineffective assistance "on 4 counts. All counts outlined in Rule 3.850 motion for postconviction relief;" and (4) the trial court erred in not striking juror Forshay for cause. In his reply to the Respondent's response, Petitioner clarifies that his ground (3) is premised on the following alleged errors by trial counsel: failure to strike Forshay for cause; failure to "move for suppression of insufficient evidence" or move for a judgment of acquittal; failure to subpoena witnesses or investigate; admitting Petitioner's guilt; and improper comments by prosecutor. See Doc. 15 at 9.

**Exhaustion of Remedies**

There are two prerequisites to federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct

manner."[2] This means that "a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."[3]

A petitioner's pro se status does not alone amount to good cause.[4]

A petition for writ of habeas corpus should not be entertained unless the Petitioner has first exhausted his state remedies.[5] The courts of Florida must be given the opportunity to consider the Petitioner's legal theory of a federal constitutional deficiency and the factual basis for that theory.[6] Concerns of comity require that exhaustion cannot be satisfied by the mere statement of a federal claim in state court.[7] The Petitioner must afford the State a full and fair opportunity to address and resolve the claim on the merits.[8]

---

[2] Upshaw v. Singletary, 70 F.3d 576, 578-579 (11th Cir. 1995) (citations omitted).

[3] Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir.) cert. denied, 513 U.S. 1061 (1994) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)).

[4] See Harmon v. Barton, 894 F.2d 1268, 1275 (11th Cir.) cert. denied, 498 U.S. 832 (1990).

[5] Castille v. Peoples, 489 U.S. 346, 349, *reh'g denied*, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982).

[6] Picard v. Connor, 404 U.S. 270, 277 (1971).

[7] Footman v. Singletary, 978 F.2d 1207, 1210-11 (11th Cir. 1992).

[8] Id.

The Respondent contends that Petitioner is procedurally barred from pursuing all claims except for the ineffective-assistance claims that were asserted in his Rule 3.850 motion. See Doc. 9. The Court agrees. Petitioner's grounds (1), (2), and (4) pertain to errors at trial that must be raised on direct appeal, and Petitioner failed to do so. Further, Petitioner did not raise such claims in his Rule 3.850 motion, except in the context of his ineffective-assistance claims. Accordingly, the Court concludes that all but Ground (3) of Petitioner's claims are unexhausted, that Petitioner has procedurally defaulted such claims, and that Petitioner has failed to establish cause and prejudice sufficient to overcome such procedural default.

## **Merits of Exhausted Claims**

Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), the role of a federal habeas court when reviewing a state prisoner's application pursuant to 28 U.S.C. § 2254 is limited.[9] Specifically, a federal court must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[10] The "contrary to" and "unreasonable application" clauses provide separate bases for review.[11] A state court's rejection of a claim on the merits is entitled to deference regardless whether

---

[9] See Williams v. Taylor, 529 U.S. 362, 403-404, 120 S.Ct. 1495, 1518-19 (2000).

[10] See 28 U.S.C. § 2254(d)(1).

[11] Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

9

the state court has explained the rationale for its ruling.[12]

## **Ineffective Assistance of Counsel**

In order to state a successful ineffective assistance of counsel claim, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that the attorney's deficient performance prejudiced the defense.[13] Both prongs must be shown in order to succeed on an ineffective-assistance claim. Further, to prove prejudice, a Petitioner must show that there is a reasonable probability that the outcome of the trial would have been different but for counsel's unprofessional errors.

When reviewing an ineffective assistance of counsel claim, the court's role "is not to grade counsel's performance;" instead, the court's role is to conduct an objective inquiry and determine "whether counsel's performance [was] reasonable under prevailing professional norms." Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (internal quotations and citation omitted). Therefore, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 1314. "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. "Thus, counsel cannot be adjudged

---

[12] Wright v. Secretary for the Dept. of Corrections, 278 F.3d 1245, 1255 (11th Cir. 2002) cert. denied, 538 U.S. 906 (2003); see also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004).

[13] Strickland v. Washington, 466 U.S. 668, 688 (1984).

incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy." Id. (quoting Darden v. Wainwright, 477 U.S. 168 (1986)). To overcome the strong presumption in favor of competence, the petitioner bears the burden of establishing "that no competent counsel would have taken the action that his counsel did take." Id. at 1314-15.

### (1) Failure to strike juror Forshay

Petitioner contends that his trial counsel should have stricken juror Forshay for cause based on his response of "probably" to counsel's question during voir dire as to whether Forshay's experience of being confronted with a gun might have affected his ability to consider the evidence fairly in a case where there was an allegation that a gun was pointed at someone. Neither the court nor either of the parties queried Mr. Forshay further on his response. The trial court rejected this claim on postconviction review because Petitioner sat through voir dire with his counsel and never expressed dissatisfaction with the jury even when given an opportunity to do so by the court.

Although the state trial court did not expressly analyze this claim as a Strickland ineffective-assistance claim, the record does not support a conclusion that that the trial court's rejection of this claim is contrary to Strickland. A review of the voir dire transcript reflects that the trial court and Petitioner's counsel carefully questioned the venire as to whether there were any reasons as to why they could not sit in judgment of Petitioner, and juror Forshay expressly confirmed that he

11

understood that Petitioner was presumed innocent and that the state must prove his guilt beyond a reasonable doubt.  App. tab C. at 23.   In the context of the voir dire as a whole, the court does not agree with Petitioner that Mr. Forshay's subsequent response of "probably" is an unequivocal statement of bias meriting his exclusion from the jury.

Even if Petitioner's counsel arguably could have queried Mr. Forshay further regarding the existence of bias, Petitioner still must prove that he was prejudiced by counsel's failure to do so.  A review of the trial transcript reflects that there is not a reasonable possibility that the outcome of the trial would have been different but for counsel's failure to question juror Forshay further.  Although Petitioner contends otherwise, the evidence of guilt adduced at trial was overwhelming, including the testimony of the victim and another eyewitness who saw Petitioner aim a loaded gun at the victim.  Accordingly, the court concludes that even if counsel's performance was arguably deficient, Petitioner has failed to establish any prejudice within the meaning of Strickland and therefore Petitioner is not entitled to federal habeas relief.

### (2) Supression of evidence

Petitioner contends that counsel erred by failing to "move for suppression of insufficient evidence" or move for a judgment of acquittal.  Doc. 15 at 9.  Petitioner contends that a reasonable attorney would have moved for suppression of the firearm.  The trial court found that based on the evidence adduced at trial there was no basis for a motion to suppress, noting that the outcome of the trial depended on

12

the credibility of the three witnesses. App. tab J. As summarized above, the uncontroverted testimony showed that Petitioner had in his possession a gun that belonged to Bentley, that Petitioner aimed the gun at Niles and then handed the gun over to Bentley, and that Bentley then gave the gun to Thompson, who turned it over to the deputies. Bentley identified the gun at trial. The jury obviously credited the witnesses' testimony. Petitioner points to no facts in the record sufficient to overcome the presumption of correctness afforded to the trial court's finding that there was no factual basis to support a motion to suppress. Accordingly, Petitioner has shown no error in the trial court's determination that counsel did not render ineffective assistance for failing to file a motion to suppress.

Petitioner also has not shown that counsel rendered ineffective assistance by not moving for a judgment of acquittal. At the close of the evidence, counsel noted out of the presence of the jury that if the witnesses were believed, then the state had made out a prima facie case against Petitioner. At that point, the court indicated that it would reserve a ruling on a motion for acquittal. Counsel did not request a ruling on a motion for acquittal after resting without putting on any evidence. Nevertheless, for the same reason noted above Petitioner suffered no prejudice by counsel's failure to expressly move for a judgment of acquittal. The evidence of Petitioner's guilt was overwhelming, and there is not a reasonable possibility that the outcome of the proceeding would have been different had counsel urged a plainly unmeritorious motion. Petitioner has not shown that the trial court's rejection of this

13

claim was contrary to, or an unreasonable application of, Strickland.

### (3) Failure to subpoena or investigate witnesses

Petitioner contends that counsel failed to investigate and call witnesses Floyd Mudd or David Parrish, who would have provided exculpatory evidence. Petitioner also conclusionally asserts that Deputy John Galvin should have been called as a "hostile witness" and questioned regarding his assertedly poor investigation of the crime scene. "Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." United States v. Guerra, 628 F.2d 410, 413 (5th Cir. 1980). To the extent that Petitioner provides any explanation as to how such witnesses' testimony would have benefitted him, his claims are wholly speculative. The trial record reflects that Petitioner concurred in counsel's trial strategy to rest without presenting any evidence, and that Petitioner was satisfied with counsel's services in that regard. App. tab B at 59. Given the strong presumption of reasonableness afforded to counsel's strategic decisions, Petitioner has made no showing that counsel's performance was deficient. Accordingly, Petitioner has not shown that the trial court's rejection of this claim was contrary to, or an unreasonable application of, Strickland.

### (4) Alleged admissions of guilt

Petitioner argues that counsel made statements in which he alluded to or admitted Petitioner's guilt. The trial court on postconviction review rejected this

14

claim after reviewing the record, and found nothing to support Petitioner's allegation. App. tab K at 2. Upon review of the record, this court likewise finds no merit in Petitioner's claim. Of the comments identified by Petitioner, only two were even made in the presence of the jury. One comment occurred at sentencing and pertained to the sentence Petitioner could receive, and therefore had no bearing at all on the outcome of the trial. See App. tab D. at 13. One comment occurred after the close of the State's case, and out of the presence of the jury, regarding whether counsel had any grounds to move for a judgment of acquittal, and therefore also had no bearing on the outcome of the trial. See App. tab B at 57-58. One comment occurred during voir dire, when counsel noted that the State's theory was that Petitioner had stolen Bentley's gun but that Petitioner had not been charged with theft. App. tab B at 15. Such a statement is plainly not an admission of guilt of the charged offenses or of any other offense. The final comment of which Petitioner complains occurred during closing argument when counsel asked the jury to find Petitioner not guilty of both charges, and stated that "I'm not gonna quibble over the possession, he either possessed it, if he, you know, if he did one he did the other." Id. at 86. This comment accurately reflects the fact that if Petitioner was found to have committed assault with the gun, then it necessarily follows that he possessed the gun, but plainly does not amount to a concession of Petitioner's guilt. Petitioner has shown neither deficient performance nor prejudice with regard to this claim, and the trial court's rejection of this claim was not contrary to Strickland.

15

### (5) Prosecutorial misconduct

Petitioner claims that the prosecutor engaged in misconduct by suggesting at the sentencing hearing that the Petitioner had been involved in another offense by allegedly hugging and fondling a 13-year-old. Doc. 15 at 16. This claim clearly fails in the ineffective-assistance context because Petitioner's counsel objected to the comments and argued strenuously in the trial court that such comments were grounds for a new trial, notwithstanding that the trial had been concluded. Further, this claim provides no basis for federal habeas review because at most it pertains to a state sentencing issue and not to whether Petitioner's constitutional rights were violated in the course of his trial. In any event, the trial court made it clear at the sentencing hearing and on postconviction review that such comments were not considered in sentencing defendant. App. tab D at 11; tab K at 2-3. There is no factual or legal basis for granting federal habeas relief on this claim.

### Conclusion

For the foregoing reasons, the Petition is **DENIED** with prejudice. The Clerk

is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Ocala, Florida, this 11th day of March 2009.

_____
UNITED STATES DISTRICT JUDGE

c: Gordon G. Smith
   Counsel of Record